Jenna Dakroub, CA #3501170
E: jdakroub@consumerattorneys.com
**CONSUMER ATTORNEYS**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (602) 807-1525
F: (718) 715-1750

*Attorneys for Plaintiff*
*Justin Miller*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| JUSTIN MILLER,<br><br>                    Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., DISCOVER BANK,<br><br>                    Defendants. | Case No.: 5:24-cv-00699<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

Justin Miller ("Plaintiff") brings this action on an individual basis, against

Experian Information Solutions, Inc., ("Experian") and Discover Bank ("Discover")

(collectively, "Defendants"), and states as follows:

## **INTRODUCTION**

1.      Plaintiff, an identity theft victim, brings this action against Defendants

for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. Seq.*,

the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §1785 *et*

*Seq.*, and California's Identity Theft Act, Cal. Civ. Code § 1798.92, et seq.

2.     More than twenty million people, just under 10% of all adult Americans, are victims of identity theft each year.[1] Federal Law requires that each consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests. This lawsuit arises from Defendant's refusal to comply with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics. April 2021, NCJ 256085.

inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Defendant Experian acknowledges this potential for misuse and resulting damage every time it sells its respective credit monitoring services to a consumer.

5.    The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6.    These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

7.    Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

8.    One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the

public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

9.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

11.     In light of these important findings and purposes, Congress specifically

noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

12.     The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

13.     Plaintiff's claims arise out of the Defendants' plainly deficient reinvestigations considering Plaintiff's multiple disputes and repeated notice that he was a victim of identity theft.

14.     Accordingly, Plaintiff brings claims against Defendant Experian, for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

15.     Further, Plaintiff also brings claims against the Furnisher, Defendant Discover Bank, for failing to conduct a reasonable reinvestigation to determine

whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of FCRA, 15 U.S.C. § 1681s-2(b).

16.    Plaintiff also brings claims against Defendants under the protections of the California Consumer Credit Reporting Agencies Act ("CCRAA"). The CCRAA is a California state law analogue to the FCRA, requiring substantially similar or the same compliance on the part of CRAs who operate in the state of California or prepare consumer reports on residents of California.

17.    Accordingly, Plaintiff brings claims against Defendant Experian, for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the Cal. Civ. Code § 1785.14(b), for failing to reinvestigate the disputed information and for failing to review and consider all relevant information submitted by Plaintiff with respect to the disputed information, in violation of the Cal. Civ. Code § 1785.16 *et. seq*.

18.    Further, Plaintiff also brings claims against the Furnisher, Defendant Discover Bank, for furnishing information on a specific transaction or experience to the credit reporting agencies that Defendant Discover knew or should have known is incomplete or inaccurate; for furnishing and continuing to report inaccurate information on the Account at Issue that was the product of identity theft and fraud; and causing the Account at Issue to be added to Plaintiff's credit file with the national credit bureaus, including but not limited to Defendant Experian, in violation of Cal.

Civ. Code § 1785.25.

19.   Plaintiff also brings claims against Furnisher, Defendant Discover, for violations of the Cal. Civ. Code § 1798.92.

20.   As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., of the CCRAA, Cal. Civ. Code § 1785 *et seq*., and of the Cal. Civ. Code § 1798.92 *et seq.,* as described herein.

## I.   **JURISDICTION AND VENUE**

21.   This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as those claims arising under federal law.

22.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transacts business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## II. **PARTIES**

23.   Justin Miller ("Plaintiff") is a natural person residing in Upland,

California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1785.3(b) and a "victim of identity theft" as that term is defined in Cal. Civ. Code § 1798.92(d).

24.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of California, including within this District. Experian can be served through its registered agent, C T Corporation System, at 330 N Brand Blvd, Glendale, CA 91203.

25.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and a "consumer credit reporting agency" as defined in Cal. Civ. Code § 1785.3(d). Defendant Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) and Cal. Civ. Code § 1785.3(b) to third parties.

26.     The information that Defendant Experian collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Defendant Experian also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

27.     Defendant Experian collects and maintains such information about

consumers, whether consumers like it or not. Consumers do not have a choice as to whether Defendant Experian collects and maintains information about them. Not only that, but consumers cannot remove information that Defendant Experian collects and maintains about them from the Defendant Experian database. Further, Defendant Experian sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Defendant Experian sold.

28.    Defendant Discover Bank ("Defendant Discover") is a state chartered bank with a principal place of business located at 502 E Market St., Greenwood, Delaware 19950, and is authorized to do business in the State of California, including within this District.

29.    Defendant Discover is a "Furnisher" as defined in 12 CFR 1022.41 and a "person" as defined by Cal. Civ. Code § 1785.3(j). Defendant Discover regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report. A data furnisher, such as Defendant Discover, is an entity that reports information about consumers to consumer reporting agencies (CRAs), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc. Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. §1681s-2(b) of the FCRA and Cal. Civ. Code § 1785.25-26.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

30.    The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

31.    The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

32.    Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *See* 15 U.S.C. § 1681(b).

33.    Congress also recognized that CRAs such as Defendant Experian "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

34. For that reason, Congress ensured that the FCRA also provides special protections for victims of identity theft.

35. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

36. Similarly, the FCRA also imposes a duty upon the Furnishers, such as Defendant Discover, to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. (15 U.S.C. § 1681s-2(b)).

37. The FCRA provides consumers with a private right of action against consumer reporting agencies, such as Defendant Experian, and data furnishers such as Defendant Discover, that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Identity Theft Incident

38. On October 15, 2018, Plaintiff lost his cell phone and wallet.

39. Plaintiff's wallet contained his driver's license and social security card.

40. Sometime later, an identity thief used Plaintiff's personal information to open several credit cards and bank accounts in Plaintiff's name.

41.     Upon information and belief, the identity thief used the fraudulently opened bank accounts to make payments on the fraudulently opened credit cards to prolong the identity theft scheme until the credit cards were maxed out and stopped making payments.

42.     On September 28, 2023, Plaintiff filed an FTC Identity Theft Report and identified the credit cards and bank accounts that were fraudulently opened and without his consent or authorization.

**Plaintiff's Dispute to Defendants**

43.     On or about September 7, 2023, Plaintiff alerted Defendant Discover to the fraudulently opened Discover credit card ending 9638 ("Account at Issue") and disputed the same with Defendant Discover directly.

44.     On that same day, and out of concern for the accuracy of his credit file and preservation of his credit score and fearing that any of his actual creditors might take adverse action against him, Plaintiff disputed the same Account at Issue with Defendant Experian.

45.     Plaintiff provided sufficient information to Defendant Experian to identify his credit file and sufficient information to support his dispute, including but not limited to a copy of the FTC Identity Theft Report.

46.     Plaintiff requested that Defendant Experian remove the fraudulently opened Account at Issue from his credit reports.

47.     On or about September 22, 2023, in response to Plaintiff's dispute,

Defendant Discover confirmed it had conducted an investigation, reviewed the history of the Account at Issue and its reporting of the Account at Issue to the Credit Bureaus.

48.     In that same letter, Defendant Discover represented to Plaintiff that it had updated its reporting of the Account at Issue with the Credit Bureaus and "Requested Removal of tradeline from your credit file."

49.     Upon information and belief, Defendant Discover failed to request removal of the Account at Issue of Defendant Experian.

50.     Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

51.     Defendant Experian failed to reinvestigate Plaintiff's September 7, 2023, dispute and failed to remove the disputed identity theft information.

52.     Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

## Plaintiff's Dispute to Defendant Discover

53.     On September 28, 2023, Plaintiff again disputed the Account at Issue with Discover out of an abundance of caution and concern that the Account at Issue was still reporting to his credit file.

54.     Plaintiff identified himself, enclosed the FTC Identity Theft Report, and

identified not only the fraudulently opened Account at Issue, but also a number of other pieces of personally identifying information that did not belong to him, including an address, phone numbers, and multiple email addresses.

55.     Plaintiff also explained to Defendant Discover that the payments made on the Account at Issue were sourced from fraudulently opened bank accounts rather than from Plaintiff's own bank accounts.

56.     Upon information and belief, Defendant Discover failed to adequately review all of the information provided to it by Plaintiff.

57.     Upon information and belief, Defendant Discover failed to request of Defendant Experian the removal of the Account at Issue.

**Plaintiff's Second Dispute to Defendant Experian**

58.     On October 26, 2023, growing increasingly anxious, worried, and concerned that his disputes were not being taken seriously, Plaintiff disputed the Account at Issue with Experian once again.

59.     Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

60.     Plaintiff also informed Defendant Experian that Defendant Discover had previously investigated and determined that the Account at Issue was the product of identity theft and enclosed a copy of that communication from Defendant Discover in support of his dispute.

61.     Plaintiff requested that the Account at Issue be removed from his credit

reports.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

62.     Sometime prior to November 23, 2023, Defendant Experian received Plaintiff's dispute and request that the fraudulently opened Account at Issue be removed from his credit reports.

63.     Upon information and belief, Defendant Experian sent Defendant Discover an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 26, 2023, dispute to Defendant Experian.

64.     Upon information and belief, Defendant Discover received Defendant Experian's ACDV and did not adequately reinvestigate Plaintiff's dispute.

65.     On November 23, 2023, Defendant Experian issued dispute results to Plaintiff wherein it communicated that the disputed information would not be removed because Defendant Discover had verified the disputed information as accurate.

66.     Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

67.     Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's October 26, 2023, dispute and failed to remove the identity theft information.

68.     Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review

all relevant information available to it, and failing to recognize that the disputed Account at Issue was the product of identity theft.

**Defendant Experian's Method for Considering Consumer Credit Report Disputes**

69.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

70.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

71.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

72.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

73.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

74.   Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

75.   The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

76.   These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

77.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

78.   The data furnishers, like Defendant Discover, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

79.   Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Discover's Unreasonable Dispute Reinvestigation**

80.     Upon information and belief, Defendant Discover failed to review all relevant information provided to it by Plaintiff.

81.     Upon information and belief, Defendant Discover verified the disputed information as accurate in response to Defendant Experian's ACDV.

82.     Defendant Discover violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Account at Issue was the product of identity theft.

**Plaintiff's Dispute to Defendant Discover November 2023**

83.     Plaintiff was shocked and devastated at Experian's response to his dispute.

84.     Plaintiff couldn't believe that even though Defendant Discover had told him at least as far back as September 22, 2023, that the Account at Issue would be removed from his credit reports, it also told Defendant Experian that the information was accurate and should remain.

85.     On November 27, 2023, Plaintiff again disputed the fraudulent Account at Issue with Defendant Discover.

86.     Plaintiff identified himself, identified the Account at Issue, and enclosed a copy of Defendant Discover's letter to him regarding its previous investigation and request that the Account at Issue be removed from his credit reports.

87.     Upon information and belief, Defendant Discover failed to adequately review all of the information provided to it by Plaintiff.

88.     Upon information and belief, Defendant Discover failed to request of Defendant Experian the removal of the Account at Issue.

**Plaintiff's Dispute to Defendant Discover December 2023**

89.     On December 7, 2023, having not heard back from Defendant Discover and growing further anxious about the fact that an account with a balance of more than eight thousand dollars continued to be affiliated with him and report to his credit files and reports, Plaintiff again disputed the fraudulent Account at Issue with Defendant Discover.

90.     Plaintiff identified himself, identified the Account at Issue, enclosed a copy of the FTC Identity Theft Report, as well as a copy of Defendant Discover's communication to Plaintiff agreeing that the Account at Issue did not belong to Plaintiff.

91.     On December 11, 2023, in response to Plaintiff's dispute, Defendant Discover confirmed it had conducted an investigation pertaining to the Account at Issue, reviewed the history of the Account at Issue, and reviewed its reporting of the Account at Issue to the Credit Bureaus.

92.     In that same letter, Defendant Discover represented to Plaintiff that it had updated its reporting of the Account at Issue with the Credit Bureaus and "Requested Removal of tradeline from your credit file."

93.    On December 21, 2023, Defendant Discover issued another letter to Plaintiff in response to Plaintiff's dispute.

94.    In that letter, Defendant Discover advised Plaintiff that it had determined that Plaintiff was not responsible for the Account at Issue or its balance.

95.    Further, Defendant Discover represented that it had sent an update to the major credit reporting agencies, including Defendant Experian, requesting the account be removed from Plaintiff's credit file.

96.    Upon information and belief, Defendant Discover failed to request removal of the Account at Issue of Defendant Experian.

**Plaintiff's Third Dispute to Defendant Experian Regarding the Inaccurate Credit Reporting**

97.    As of December 7, 2023, Defendant Experian was still reporting that the fraudulent Account at Issue.

98.    Sometime after, frustrated and perturbed, Plaintiff again disputed the Account at Issue with Experian.

99.    Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

100.   Plaintiff requested that the Account at Issue be removed from his credit reports.

**Defendant Experian's Unreasonable Reinvestigation**

101.   Sometime prior to January 22, 2024, Defendant Experian received

Plaintiff's dispute and request that the fraudulently opened Account at Issue be removed from his credit reports.

102.   Upon information and belief, Defendant Experian sent Defendant Discover an automated credit dispute verification ("ACDV") pursuant to Plaintiff's dispute to Defendant Experian.

103.   Upon information and belief, Defendant Discover received Defendant Experian's ACDV and did not adequately reinvestigate Plaintiff's dispute.

104.   On January 22, 2024, Defendant Experian issued dispute results to Plaintiff wherein it communicated that the disputed information would not be removed because Defendant Discover had verified the disputed information as accurate.

105.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

106.   Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute and failed to remove the identity theft information.

107.   Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Account at Issue was the product of identity theft.

**Defendant Discover's Unreasonable Dispute Reinvestigation**

108.   Upon information and belief, Defendant Discover failed to review all

relevant information provided to it by Plaintiff.

109.   Upon information and belief, Defendant Discover verified the disputed information as accurate in response to Defendant Experian's ACDV.

110.   Defendant Discover violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Account at Issue was the product of identity theft.

### Plaintiff's Fourth Dispute to Defendant Experian

111.   As of January 25, 2024, Defendant Experian was still reporting the fraudulent Account at Issue.

112.   On January 25, 2024, extremely shocked, surprised, and embarrassed at Defendant Experian's *continued* inaccurate reporting, Plaintiff disputed the fraudulent Account at Issue with Experian via telephone.

113.   Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

114.   Plaintiff requested that the Account at Issue be removed from his credit reports.

### Defendant Experian's Unreasonable Reinvestigation

115.   Upon information and belief, Defendant Experian sent Defendant Discover an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 25, 2024, dispute to Defendant Experian.

116.   Upon information and belief, Defendant Discover received Defendant Experian's ACDV and did not adequately reinvestigate Plaintiff's dispute.

117.   On February 19, 2024, Defendant Experian issued dispute results to Plaintiff wherein it communicated that the disputed information would not be removed because Defendant Discover had verified the disputed information as accurate.

118.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

119.   Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's January 25, 2024, dispute and failed to remove the identity theft information.

120.   Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Account at Issue was the product of identity theft.

**Defendant Discover's Unreasonable Dispute Reinvestigation**

121.   Upon information and belief, Defendant Discover failed to review all relevant information provided to it by Plaintiff.

122.   Upon information and belief, on or prior to February 19, 2024, Defendant Discover verified the disputed information as accurate in response to Defendant Experian's ACDV.

123.   Defendant Discover violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Account at Issue was the product of identity theft.

### Plaintiff's Damages

124.   Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

125.   Plaintiff filed an FTC ID Theft Affidavit and notified Defendant Discover of the fraud so that they could close the account.

126.   Even though Defendant Discover acknowledged the fraudulent nature of the Account at Issue to Plaintiff, Defendant Discover repeatedly failed to request of Defendant Experian the removal of the account from Plaintiff's Experian credit file.

127.   Losing hope that Defendant Discover would ever correct its reporting, Plaintiff began disputing the fraudulently opened Account at Issue with Defendant Experian.

128.   Plaintiff identified himself as an identity theft victim and requested that the Account at Issue be removed from his credit reports.

129.   Defendant Discover has repeatedly verified to Defendant Experian that the fraudulently opened Account at Issue belonged to Plaintiff.

130.   Defendant Experian has repeatedly denied Plaintiff's identity theft

claim – at all times failing to provide Plaintiff with any of the investigation materials it reviewed in coming to that determination.

131.   As a direct result of the Defendant Discover's ardent refusal to remove the disputed Account at Issue and to stop furnishing the same to Defendant Experian, Defendant Discover has continued to saddle Plaintiff with more than $8,000.00 in debt which was the product of identity theft and fraud.

132.   Further, as a direct result of Defendant Discover's verification of the disputed Account at Issue to Defendant Experian, Defendant Discover has continued to saddle Plaintiff with more than $8,000.00 in debt which was the product of identity theft and fraud.

133.   As a direct result of Defendant Experian's ardent refusal to remove the disputed Account at Issue, Experian has continued to saddle Plaintiff with more than $8,000.00 in debt which was the product of identity theft and fraud.

134.   Due to Defendants' ardent refusal to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

135.   Further, and due to Defendants' inexplicable refusal to remove and/or block information that is the product of identity theft and fraud from an identity theft victim's credit file, Plaintiff expended countless hours disputing the same with the Defendants.

136.   Defendant's conduct disrupted Plaintiff's life.

137.   In addition to impacting his work productivity and income, dealing with the consequences of Defendants' conduct has taken Plaintiff away from time he would otherwise have spent with his friends and family. It has taken a toll on Plaintiff.

138.   Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes. Further, Plaintiff reasonably believes that the fraudulent Account at Issue and related inquiries have negatively impacted and depressed his credit score.

139.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

140.   At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

141.   After initially learning of the identity theft, Plaintiff did all the right things to protect himself and to ensure his credit file was secure and even going so far as to ensure Defendant Discover didn't lose additional funds due to identity theft.

142.   Given that Plaintiff had done everything he could to protect himself following the identity theft, he has no faith in Defendants, and constantly feels the

plague of false reporting.

143.   Approximately the same time he discovered the fraudulent account on his report, Plaintiff got married. He and his new wife want to buy a home and move from their one-bedroom apartment, but Plaintiff is afraid to apply for a mortgage with the derogatory mark on his report.

144.   Also in the fall of 2023, Plaintiff developed a rash on his body for which he's sought medical treatment. Plaintiff's physician has been unable to determine a cause for the rash, particularly in the absence of a known allergen or any change in environment.

145.   In addition to the rash, Plaintiff has been suffering from headaches and elevated blood pressure ever since he found the Discover account on his report. He's also been distracted, found it hard to focus, and his sleep has been impacted.

146.   Because of the significant amount of work he's done researching how to dispute identity theft tradelines, drafting his own dispute letters, and traveling to and from FedEx to make copies of those letters, Plaintiff estimates he's spent approximately 9-10 hours per week trying in vain to remedy the false negative reporting.

147.   Defendant Equifax has a long history of disregarding the credit reporting rights of identity theft victims under the FCRA. For example, in the very similar matter of *April Hendrix vs. Equifax, et. Al.*, (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs, including Defendant Equifax, over their

repeated wrongful removal of security freezes, release of her credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on her credit reports.

148.   The *Hendrix* suit put Defendant Equifax on notice several years ago that its policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

149.   Defendant Experian has had years of notice in the form of federal lawsuits, despite it all, Defendant Experian did not take any better steps to protect the Plaintiff here.

150.   The internal policies and procedures of Defendant Experian do not appear to place any value on its obligations under the FCRA to report credit entries accurately and to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose.

151.   As a standard practice, Defendant Experian does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the data furnishers, like Defendant Discover here, despite numerous court decisions admonishing this practice. See *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back

to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

152.  Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA are willful.

153.  Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

154.  As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent account which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent account which was the product of identity theft.

155.  Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish

and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to
### Assure Maximum Possible Accuracy
### (Defendant Experian Only)

156.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

157.   The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

158.   On numerous occasions, Defendant Experian prepared patently false consumer reports concerning Plaintiff.

159.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, Defendant Experian readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by reporting the fraudulent Account at Issue that was the product of identity theft in Plaintiff's consumer reports.

160.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to

establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

161. As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent account which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent account which was the product of identity theft.

162. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendant Experian.

163. Defendant Experian's conduct, actions, and inactions were willful, rendering Defendant Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

164.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Defendant Experian Only)**

165.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

166.   The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. Id.

167.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

168.   On numerous occasions during 2023 and 2024, Plaintiff disputed the inaccurate information with Defendant Experian and requested that it correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the fraudulent account that was the product of

identity theft which was a very stressful situation for the Plaintiff.

169.   Plaintiff disputed the identity theft information to Defendant Experian repeatedly, to no avail.

170.   Plaintiff supported his disputes with a copy of the FTC ID Theft Report and Defendant Discover's own numerous communications acknowledging that the Account at Issue should be removed from Plaintiff's credit files and reports.

171.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

172.   Plaintiff expended resources in the form of time and money to repeatedly dispute the same fraudulent and inaccurate information with Defendant Experian.

173.   Defendant Experian's refusal to delete the identity theft Account at Issue provided credibility to the account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

174.   Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on

which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

175. As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent account which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent account which was the product of identity theft.

176. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendant Experian.

177. Defendant Experian's conduct, actions, and inactions were willful, rendering Defendant Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

178.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer**
**(Defendant Discover Only)**

179.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

180.   Defendant Discover refused to remove information that was the product of identity theft and fraud – namely the Account at Issue with a balance in excess of $8,000.00 that was opened without Plaintiff's permission or consent.

181.   Defendant Discover violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendant Experian; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendant Experian.

182.   As a result of Defendant Discover's conduct, action, and inaction,

Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent account which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent account which was the product of identity theft.

183.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, and anxiety.

184.   Defendant Discover's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

185.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Discover in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
### Violation of the Cal. Civ. Code § 1785 *et seq.*
### (Defendant Experian Only)

186.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

187.    Defendant Experian violated the CCRAA. Defendant Experian's violations include, but are not limited to, the following:

188.    Defendant Experian violated Cal. Civ. Code § 1785.14(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff when preparing a consumer credit report.

189.    Defendant Experian violated Cal. Civ. Code § 1785.16 *et. seq.*, including but not limited to, by:

      a.  failing to reinvestigate the disputed information;

      b.  failing to review and consider all relevant information submitted by Plaintiff with respect to the disputed information.

190.    Defendant Experian's acts, as described above, were done willfully and knowingly.

191.    Consequently, the Defendant Experian is liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31.

## COUNT V
### Violation of the Cal. Civ. Code § 1785 *et seq.*
### (Defendant Discover Only)

192.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

193.    Defendant Discover violated the CCRAA. Defendant Discover's violations include, but are not limited to, the following:

a. Defendant Discover violated Cal. Civ. Code § 1785.25 by furnishing information on a specific transaction or experience to the credit reporting agencies that Defendant Discover knew or should have known is incomplete or inaccurate;

b. Defendant Discover furnished and continued to report inaccurate information on the Account at Issue that was the product of identity theft and fraud;

c. Defendant Discover caused the Account at Issue to be added to Plaintiff's credit file with the national credit bureaus, including but not limited to Defendant Experian. The Account at Issue was the product of identity theft, opened without Plaintiff's consent or authorization.

194. Defendant Discover received disputes from Plaintiff and from Defendant Experian and other CRAs with respect to the inaccurate reporting of the fraudulent account.

195. Even after receiving the disputes, Defendant Discover continued to inaccurately furnish information to the credit reporting agencies about the Account at Issue.

196. Defendant Discover's acts, as described above, were done willfully and knowingly.

197. Consequently, the Defendant Discover is liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code

§ 1785.31.

**COUNT VI**
**Violation of the Cal. Civ. Code § 1798.92 *et seq.***
**(Defendant Discover Only)**

198.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

199.   The foregoing acts and omissions constitute numerous and multiple violations of the Cal. Civ. Code § 1798.92, including but not limited to each and every one of the above-cited provisions of Cal. Civ. Code § 1798.92.

200.   Plaintiff's disputes to Discover explained the basis for Plaintiff's belief that Plaintiff is the victim of identity theft.

201.   Plaintiff included substantiating documents to confirm Plaintiff did not obtain the Account at Issue.

202.   Defendant Discover conducted an unreasonable investigation following receipt of Plaintiff's disputes and continues to maintain an interest in the fraudulent debt as of the date of this filing.

203.   As a result of each and every violation of Cal. Civ. Code § 1798.92, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5); a civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6); costs pursuant to Cal. Civ. Code § 1798.93(c)(5), attorney's fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5) and any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5).

## **PRAYER FOR RELIEF**

(a)   WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants: Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b)   An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, *et seq.;*

(c)   An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o;

(d)   Declaratory judgment that Defendants violated the CCRAA;

(e)   An award of actual, statutory, and punitive damages pursuant to Cal. Civ. Code § 1785.31(a)(1) and/or Cal. Civ. Code § 1785.31(a)(2);

(f)   An award of costs and reasonable attorneys' fees pursuant to Cal. Civ. Code § 1785.31(d);

(g)   Punitive damages to be determined at trial, for the sake of example and punishing Defendants for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a);

(h)   Awarding Plaintiff any pre-judgment and post judgment interest as may be allowed under the law;

(i)   An award of actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5);

(j)   A civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6);

(k) Attorneys' fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5);

(l) Any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5); and,

(m) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: April 3, 2024

*/s/ Jenna Dakroub*
Jenna Dakroub, CA #3501170
E: jdakroub@consumerattorneys.com
**CONSUMER ATTORNEYS**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (602) 807-1525
F: (718) 715-1750

*Attorneys for Plaintiff*
*Justin Miller*

41